**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KAREN LYNN HARPER,

                Plaintiff,

                                            Case No. 3:15-cv-623-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Karen Lynn Harper ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of chronic venous insufficiency (CVI), deep vein thrombosis (DVT), lymphedema, stress, constant stomach pain, and acid reflux due to a hiatal hernia. See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed August 7, 2015, at 179. Plaintiff filed applications for DIB and SSI on April 17, 2012, alleging in both an onset date of March 27, 2012. Tr. at 161-62 (DIB); Tr. at 163-66 (SSI). Plaintiff's applications were denied initially, Tr. at 93-94 (DIB); Tr. at 98-99 (SSI), and were denied upon reconsideration, Tr. at 107-08 (DIB); Tr. at 112-13 (SSI).

At a hearing on December 16, 2013, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 32-50. On January 14, 2014, the ALJ issued a Decision finding Plaintiff not

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed August 7, 2015; Reference Order (Doc. No. 17), entered August 11, 2015.

disabled "from March 27, 2012, through the date of th[e D]ecision," and denying Plaintiff's claim. Tr. at 26; see Tr. at 18-27. Plaintiff then requested review by the Appeals Council, Tr. at 7, and submitted to the Council additional evidence, specifically, photographs of her legs and feet, Tr. at 4, 5; see Tr. at 233-42, 493-96 (photographs, with cover letters). On March 27, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On May 19, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: (1) whether the ALJ "failed to offer good cause for rejecting the opinion of [Plaintiff's] treating physician, Dr. Joseph Czerkawski"; and (2) whether the ALJ failed to "provide explicit and adequate reasons for finding [Plaintiff's] testimony to be less than fully credible." Plaintiff Karen Harper's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 19; "Pl.'s Mem."), filed October 5, 2015, at 1; see id. at 15-23. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") on December 4, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 20-26. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 27, 2012, the alleged onset date." Tr. at 20 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: deep vein thrombosis, osteoarthritis of the knees, lymphedema, obesity, and lumbar degenerative disc disease." Tr. at 20 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . with the following limitations: lift and carry 15 pounds occasionally and 10 pounds frequently; sit 6 hours, stand 6 hours, and walk 6 hours within an 8-hour workday; [she] needs a sit stand option of 30 minutes. No climbing of ladders, ropes, scaffolds, ramps, or stairs; no balancing; occasional crouching, kneeling, and crawling; no use of the lower extremities to operate foot controls; no concentrated exposure to vibrations, to work around moving mechanical parts, or to work at unprotected heights.

Tr. at 22 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a security guard, a multi-line receptionist, or a customer service

representative. Tr. at 25 (emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age (forty-five (45) years old on the alleged onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 25 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "warehouse checker"; an "assembler, small parts"; and a "ticket seller." Tr. at 26 (some capitalization omitted). The ALJ concluded that Plaintiff "has not been not under a disability . . . from March 27, 2012, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

## III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's

findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The two issues Plaintiff raises are addressed in turn below.

### A.  The Weight Assigned to Dr. Czerkawski's Treating Medical Opinion

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); <u>see also</u> 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); <u>see also</u> 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

---

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Plaintiff argues the ALJ "failed to give appropriate weight to the functional capacity evaluation performed by [Plaintiff's] treating physician, Dr. Joseph Czerkawski." Pl.'s Mem. at 15. Dr. Czerkawski treated Plaintiff at least from March 2012 to November 2013, and the administrative record shows eleven different visits during that time. See Tr. at 302-20, 461-71, 476-88. Particularly at issue here is a "[p]hysical capacity evaluation" Dr. Czerkawski conducted on December 28, 2012.[5] Tr. at 477-78. Dr. Czerkawski concluded in the evaluation that Plaintiff "meets the sedentary duty category[,] only with limited pushing[,] bending and lifting and no significant stairclimbing." Tr. at 478. The doctor added that Plaintiff "may be a candidate for vocational rehabilitation[,] but at the present time and over the next few months is unable to really function [in] any capacity as far as her ability to ambulate[,] climb stairs[,] and bend." Tr. at 478. The evaluation note ends with the following remark: "At the present time[,] based on her evaluation [for] physical capacity[, I] do believe she is temporarily totally disabled for her own or any occupation." Tr. at 478.

In the Decision, the ALJ gave great weight to Dr. Czerkawski's evaluation to the extent it was consistent with the RFC finding, but the ALJ gave it little weight to the extent that its restrictions differed from the RFC because, according to the ALJ, "those restrictions are not consistent with the medical evidence of record or supported by the record as a whole." Tr. at 24. "Of note," the ALJ elaborated, Dr. Czerkawski's "Physical Capacity Evaluation was <u>a one-time examination</u>; however, the record indicates that [Plaintiff's] impairments are managed on medication." Tr. at 24 (emphasis added). The ALJ observed, specifically, that Plaintiff's "PT and INR levels [(related to blood clotting)[6]] were described as excellent in

---

[5] Although Plaintiff refers to it as a <u>functional</u> capacity evaluation, see Pl.'s Mem. at 15, Dr. Czerkawski and the ALJ both call it a <u>physical</u> capacity evaluation, see Tr. at 24, 477.

[6] Prothrombin time (PT) is used to help diagnose the cause of unexplained bleeding or inappropriate blood clots, and the international normalized ratio (INR) is a calculation based on results
(continued...)

-7-

September 2012." Tr. at 24 (citing Ex. 9F, at 1).[7]  The ALJ also stated that Plaintiff's "history of venous thrombosis in the lower extremities [(DVT)], lymphedema, and chronic peripheral venous insufficiency was noted as resolved in June 2013." Tr. at 24 (citing Ex. 8F, at 16).[8] The ALJ then pointed out that Plaintiff "denied joint pain/swelling" in February and September 2012, Tr. at 24 (citing Ex. 3F, at 21; Ex. 9F, at 2),[9] and that she "denied low back pain" in June and July 2013, Tr. at 24 (citing Ex. 8F, at 9, 13).[10]

Following the assessment of Dr. Czerkawski's opinion, the ALJ gave "some weight" to the opinion of a state agency non-examining consultant that Plaintiff was capable of a reduced range of light work, but the ALJ stated he was including "additional limitations" in the RFC finding to give Plaintiff "some benefit of the doubt." Tr. at 25 (citing Exs. 5A, 6A);[11] see Tr. at 72-74, 81-83 (copies of physical RFC assessment by state agency consultant James Patty, M.D.).

Plaintiff asserts the ALJ erred in assessing Dr. Czerkawski's opinion in part because he incorrectly "thought that Dr. Czerkawski was only a one-time examiner" rather than a treating physician. Pl.'s Mem. at 16. Plaintiff also contends the ALJ "misinterpreted the medical evidence" to find her DVT (deep vein thrombosis) was under control. Id. at 19; see id. at 17. Plaintiff points out that she "continued to have blood clotting even after [September

---

[6](...continued)
of a PT and is used to monitor individuals who are being treated with blood-thinning medication. See Prothrombin Time and International Normalized Ratio, Lab Tests Online, https://labtestsonline.org/under standing/analytes/pt/tab/test/ (last visited Aug. 19, 2016).

[7]   The cited exhibit page is located on page 457 of the administrative transcript.

[8]   The cited page is located on page 397 of the transcript.

[9]   The cited pages are located on pages 317 and 458 of the transcript, respectively.

[10]  The cited pages are located on pages 390 and 394 of the transcript, respectively.

[11]  The cited exhibits are located on pages 69-86 of the transcript.

2012], with associated pain and swelling." Id. at 17 (citing Tr. at 382-83, 389-90, 393, 469, 477-79). Additionally, the June 2013 treatment note indicating her DVT is "resolved," according to Plaintiff, "actually lists DVT as both an 'active' and as a 'resolved' problem," and it "also states that [Plaintiff] has 'increased swelling a[n]d numbness' in her left leg that 'has been present for the past 1-2 months.'" Id. (citing Tr. at 24, 393, 396-97). Regarding the ALJ's remark that Plaintiff "denied low back pain" in June and July 2013, Tr. at 24, Plaintiff contends that "the record shows that she did have pain and stiffness during other visits," Pl.'s Mem. at 18 (citing Tr. at 463, 464, 467-68, 486-88).

Furthermore, Plaintiff argues that the state agency consultant's opinion, to which the ALJ gave "some weight," Tr. at 25, "actually supports Dr. Czerkawski's finding that [Plaintiff] was limited to sedentary work," Pl.'s Mem. at 18-19 (citing 478). According to Plaintiff, "the ALJ overlooked [the consultant's] finding that [Plaintiff] would only stand or walk for two hours in an eight-hour work day." Id. at 18 (citing Tr. at 82).

Defendant argues overall that the ALJ's decision to give little weight here is supported by the ALJ's "good reasons" as well as substantial evidence, in particular "the medical record and the opinion of the State agency medical consultant." Def.'s Mem. at 6, 7. Defendant asserts that the state agency consultant's opinion supports the ALJ's finding, not Dr. Czerkawski's opinion, in part because the consultant "opined Plaintiff could sit about six hours in an eight-hour day." Id. at 9 (citing 73, 82). Defendant also argues that, by referring to Dr. Czerkawski's evaluation as a "one-time examination," "the ALJ was not suggesting that Dr. Czerkawski was a one-time examiner but that his opinion was based [on] the findings of an isolated examination, which was inconsistent with the evidence as a whole." Id. at 8 (citing Tr. at 24).

Upon review, the undersigned finds the ALJ erred with respect to Dr. Czerkawski's opinion. First, the Decision leaves unclear whether the ALJ properly assessed Dr. Czerkawski's opinion as that of a treating physician—and one who, as noted, had seen Plaintiff on at least eleven different occasions between March 2012 to November 2013. Not only did the ALJ discount the doctor's physical capacity evaluation in part because it was "a one-time examination," but the ALJ also gave no indication that he recognized Dr. Czerkawski had seen Plaintiff more than once, Tr. at 24, and thus that he was "likely to be [one of] the medical professionals most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s)," 20 C.F.R. § 404.1527(c). The undersigned, therefore, cannot discern whether the ALJ applied the appropriate standard to the opinion.

Second, the ALJ failed to address evidence in the record that appears to conflict with his findings. For example, as Plaintiff correctly observes, see Pl.'s Mem. at 17, the one record cited by the ALJ as indicating Plaintiff's venous thrombosis was "resolved" in June 2013, Tr. at 24; see Tr. at 397, also lists venous thrombosis as an "Active" problem and notes Plaintiff's "increased pain and swelling" in her left lower extremity that "has been present for the past 1-2 months," Tr. at 393-97. Indeed, Plaintiff continued to be assessed with these problems in November 2013. Tr. at 469-71. Moreover, although treatment records cited by the ALJ from February and September 2012 note Plaintiff had "[n]o joint pain/swelling," Tr. at 458, 317, those same records also include swelling among Plaintiff's problems, Tr. at 320, 462, 463. The ALJ's failure to address apparently conflicting evidence in the record leaves it unclear whether the ALJ considered all the evidence or overlooked certain portions.

Accordingly, the Decision is due to be reversed and remanded for further proceedings on this issue.

**B. The Credibility Finding**

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for

-11-

the reasons explained in th[e D]ecision." Tr. at 24.  Plaintiff contends the ALJ erred in this credibility finding because the ALJ failed to "follow up on his promise to explain the credibility finding elsewhere in the [D]ecision," Pl.'s Mem. at 21, and moreover, because "the ALJ's summary of the evidence contained no facts that could conceivably support a credibility determination," id. at 19-20 (citing Tr. at 22-25).

Plaintiff addresses some of the ALJ's specific remarks and findings to dispute whether they support an adverse credibility finding.  See id. at 21-23.  Among these is the ALJ's statement, based on treatment notes, that Plaintiff's "venous thrombosis is stable with no expanding blood clots," Tr. at 23 (ALJ's Decision, citing Ex. 8F, at 5, 10),[12] as well as the ALJ's remark that "in May 2012, [Plaintiff] was advised to exercise 20 minutes per day, increasing to 45 minutes per day over time," Tr. at 23 (citing Ex. 9F, at 12).[13]  Plaintiff argues the ALJ misconstrued the evidence of record in making these findings.  Pl.'s Mem. at 21-22. Plaintiff then contends that in the ALJ's "brief reference to [her] daily activities," the ALJ "failed to explain how those activities were inconsistent with her testimony." Id. at 22 (citing Tr. at 24).

Upon review, the undersigned finds the ALJ erred in the credibility finding because he failed to articulate "explicit and adequate reasons" for it. Wilson, 284 F.3d at 1225.  Instead, the ALJ only recited a boilerplate adverse credibility finding, without any explanation, and then moved on to discuss the medical opinions.  Tr. at 24.  The ALJ made no further mention of Plaintiff's credibility or testimony, leaving only the boilerplate statement.  Tr. at 24.  "In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review." McKinney v. Astrue, No. 8:08-cv-2318-T-TGW, 2010

---

[12]   The cited pages are located on pages 386 and 391 of the transcript, respectively.

[13]   The cited page is located on page 468 of the transcript.

WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (unpublished) (citing Marbury v. Sullivan, 957 F.2d 837, 840 n.2 (11th Cir. 1992); Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985)). Accordingly, the Decision is due to be reversed and remanded for further proceedings on this issue.

### V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate the opinion of treating physician Dr. Czerkawski, considering the medical evidence as a whole;
>
> (B) Reevaluate Plaintiff's credibility, and if discrediting it, clearly articulate the reasons for doing so; and
>
> (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on August 29, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record